[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this case, Quinn Associates, Inc., (hereinafter Quinn) is an architectural firm duly licensed and engaged in its profession in the State of Connecticut. The defendant is the Town of East Hampton, (hereinafter the Town).
Quinn has brought this action against the town in four counts. In the first count, plaintiff alleges breach of contracts. In the second count, plaintiff claims the fair and CT Page 4758 reasonable value of its services and in each of these counts the plaintiff claims $204,829.17. In the third count, the plaintiff alleges unjust enrichment. The fourth count alleging false and defamatory statements has been withdrawn by the plaintiff.
In its argument plaintiff claims that the December, 1988 replacement pages are unenforceable; that the town's understanding of the replacement pages was based upon a mutual mistake and further that if there was no mutual mistake there was no meeting of the minds at the time that modification was made, and that it was enforceable also because there was no consideration for the modification. Recognizing that it had accepted payment on a lump sum basis in 1991, Quinn argues that in so doing it has not waived or forfeited its right to compensation on an hourly basis.
In response to the defendant's special defense of accord and satisfaction, the plaintiff argues that this is insufficient as a matter of law because an agreement to pay an amount less than what is owed is unenforceable and there was uncertainty regarding material terms. Among its other arguments, the plaintiff claims that the express terms of the agreements control this dispute not the subsequent interpretation by lawyers or laymen, emphasizing that case law requires that the intent of the parties at the time of the modification prevails not subsequent interpretation of the contract.
As its final argument, the plaintiff maintains that even if Quinn is unable to prevail on its claim on a contractual basis the evidence supports a claim in unjust enrichment.
The defendant has filed an answer which denies the basic claims of the plaintiff and in addition has filed six special defenses. The sixth special defense addresses the defamation count and can be disregarded.
In the first special defense defendant maintains that the four contracts expired by their own terms as modified by the written agreement on December 22, 1991 and that the Town acted within the terms of the contract.
In the second special defense the town maintains that before calculating any offsets or back charges for errors, CT Page 4759 omissions, negligence or breach of the contract by Quinn, the Town of East Hampton had paid all but $15,393.00 for services performed by Quinn under the four subject contracts.
The defendant in the third special defense alleges an accord and satisfaction and alleges that the subject contracts which were executed in December 1987 were originally to be completed on or before December of 1989 but that when the progress of the various projects was proceeding slower than anticipated the parties by mutual agreement in December 1988 extended the completion dates for all four contract until December of 1991. When a question was raised with reference to the completion date of the contract in November 1990, the Town notified Quinn that it interpreted the contract as having extended the completion dates until December of 1991 and that in December of 1990 Quinn accepted this interpretation by the Town in writing and continued to bill accordingly for its services throughout 1991 based on the contract provisions.
The fourth special defense alleges that Quinn's claims for additional payments except for the $15,393.00 are barred by latches.
As to the fifth special defense, the defendant claims that the plaintiff's claim for additional payment based on fair and reasonable value of services are barred by the existence of a written contract between the parties and also full payment by the town under the contract.
On December 22, 1987, Quinn entered into four contracts with the Town for four school additions, renovations and code update projects. The schools were Memorial Elementary, High, Center Elementary and Middle Schools. These contracts were on identical American Institute of Architects (AIA) forms provided by Quinn and were all the same except as to price, identification of the school to which they pertained and an Exhibit A containing an area analysis for each school. These contracts were executed for the Town by Allan Bergren, Town Manager, and Dean Robbins, Building Committee Chairman, and for Quinn by Richard Quinn, President of Quinn Associates, Inc.
On page 8, Article 11, labeled "Basis of Compensation," (section 11.2.1) the schematic design phase of the basic services was filled out for each school. Section 11.2.2 providing for compensation based on a stipulated sum or CT Page 4760 percentage of construction cost and having provision for the schematic design phase, design development phase, construction documents phase, bidding or negotiation phase and construction phase was labeled "not applicable" and the area providing for percentages was left blank as to each phase.
Paragraph 11.5.1 of the agreement provided that if the basic services covered by the agreement had not been completed within twenty-four months of the date of the agreement through no fault of the architect, extension of the architect's services beyond that time would be compensated on an hourly basis as set forth in paragraph 10.3.3 and 11.3.2.
The contract as thus written would have expired on December 22, 1989.
Funding for all four projects was contingent upon passage of a Town referendum and the schematic design phase of the basic services provisions (11.2.1) were geared to the passage of this referendum. Without passage of the referendum there would have been no further projects. The twenty-four month period was also geared to the passage of the referendum. If it failed, the contract would expire. This was the reason why there was no agreement or price included for services beyond the initial schematic design phase of the project.
The referendum passed in early December of 1988 and on December 9, 1988 Quinn provided the Town with a replacement for page 9 of each contract which essentially set forth a new contractual arrangement providing a stipulated lump sum for each phase of Quinn's work (11.2.2). Quinn would be paid on a percentage basis as it completed its work.
This addition to the contract also substantially increased Quinn's fees for the schematic design phase of each contract and increased hourly rates of compensation for additional services by the architect as set forth in Articles 3 and 12 of each contract.
In addition to the changes noted above Section 11.5.1 was changed from 24 to 36 months. The remainder of that paragraph stayed the same. No change was made in the first page of the agreement which contains the original date.
On January 3, 1989, a building committee meeting took CT Page 4761 place with Mr. Quinn and his project manager, Mr. Mooney, present. At this meeting, Mr. Quinn and Mr. Mooney, reviewed with the committee the particulars of the four building projects. At this meeting the building committee authorized execution of the "revised contract" for the four projects. During this meeting, five topics were discussed in detail. 1. Project Schedules. 2. Schematic Drawings for Memorial Center and Middle Schools. 3. Construction schedule. 4. Outstanding bills. 5. Projected architectural fees.
The change in the period of the contract was also discussed at this meeting. Quinn's representatives projected a three year schedule in which the four schools would be designed and built, and all parties understood that the thirty-six month period in the revised contracts ran from December 1988 through December 1991. They recognized that this was a twenty-four million dollar, four school project which could not be completed in less than three additional years. At this meeting the Building Committee authorized Mr. Bergren to execute the revised contracts for the projects.
On November 20, 1990, Quinn wrote to the Town Manager stating,
 "I am writing to you to alert you to the fact that the owner and architect agreements we have with the Town of East Hampton for the school renovations and additions will revert to an hourly method of compensation on December 22, 1990."
At the time Quinn wrote the November 1988 letter Memorial School was 20% complete and construction at the high school was only 10% complete while Quinn had billed and been paid 100% for the four pre-construction phases of Memorial and the High School. The plans and specifications of Middle and Center Schools had not been completed nor had they received approval by the State Board of Education and local building officials.
In a letter dated December 19, 1990, counsel for the Town wrote Quinn saying he disagreed with Quinn's position and stated,
 "By the plain language of paragraph 11.5.1 as amended in December 1988, the agreements will not CT Page 4762 `revert to an hourly method of compensation' prior to December 1991 (if not later)."
Counsel stated further
 "Inasmuch as `the date hereof' noted in the foregoing was the date of execution by Mr. Bergren at some time after your transmittal letter dated December 9, 1988, the thirty-six month period indicated therein could not elapse prior to December 1991. Given the various delays in getting these projects into the construction phases, it makes perfect sense that the time period for rendering architectural services under the base contract would have been extended in this fashion."
Under date of December 20, 1990, Quinn wrote to counsel for the Town as follows:
 "I understand your point about the amended page being submitted and accepted by the Town of East Hampton in the month of December, 1988. Since we really are not requesting any additional fees at this time, I am willing to accept your interpretation.
 Based on your comments and our acceptance of the 36 month duration remaining from December, 1988, there is no need for further action on this matter until next December."
Throughout all of 1991 Quinn billed and was paid for its services on a pro rated, lump sum basis, per the schedule of values set forth in paragraph 11.2.2 and under the provisions of paragraph 10.3.2 of the contracts as revised in December 1988. During this period, miscellaneous additional services were also billed by Quinn and paid by the Town.
In November of 1991, Quinn submitted to the Town three service estimate work sheets, one for each of the remaining projects (the high school was essentially complete). These were requested by the Town to provide a projection of Quinn's fees in the event Quinn's services were extended on an hourly basis following the expiration of the contract on December 22, 1991. Quinn's estimates of the hourly cost to complete the three remaining projects after the expiration of the contract CT Page 4763 amounted to an increase in the contract prices for construction administration services of about 45% or $166,535.00.
These estimates were unacceptable to the building committee and revised estimated work sheets specifying the services that were to be included were submitted. These would have exceeded the contract price by approximately $104,000.00 and also were unacceptable and on December 23, 1991 the Town advised Quinn that it was soliciting price quotes from other architectural firms to complete the project and finally on January 10, 1992, the Town notified Quinn in writing that the contract would not be extended and that the Town was going to hire a substitute architect to complete the projects. The Town requested a final bill for services rendered.
In a letter dated February 6, 1992, Quinn, through its attorney, submitted a final billing for three projects covering the period from January 1991 through January 1992 without reconciling the amounts billed for services through December 1991 against the amounts paid by the town for these billings. For the fourth project, Center Elementary, as to which construction did not begin under Quinn, it sought a "scope change" of $21,631.90.
The town responded to Quinn with a reconciliation of accounts which arrived at the conclusion that the town owed, and still acknowledges that it owes, Quinn $15,392.81.
It is the opinion of this Court that it was the intention of the parties to extend the operative period of the contract from two to three years until the end of December 1991. Through failure to change the date on the contract, a literal reading of same raised a question as to the termination date but this question was resolved by the parties through the correspondence entered into between them with respect to the completion date. There was a meeting of the minds and both parties agreed that the contract would terminate in December of 1991.
Therefore, judgment may enter for the defendant on the plaintiff's revised complaint except as to the sum of $15,393.00 which the defendant admits that it owes to the plaintiff. The final disposition of that sum is to be determined in the second phase of this case which will be the CT Page 4764 action with respect to the setoffs and counterclaims.
Hale, State Trial Referee